```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Hilary Bricker, et al.,        :

      Plaintiffs,            :

   v.                           :        Case No. 2:10-cv-278

R & A Pizza, Inc., et al.,     :        JUDGE MICHAEL H. WATSON
                                        Magistrate Judge Kemp

      Defendants.            :

<u>ORDER</u>

    This employment discrimination case is before the Court to consider the motion to compel filed by plaintiffs Hilary Bricker and Katie Bricker.  Through this motion, the Brickers seek to compel the deposition of Julie Wigley, an employee of Domino's Pizza, LLC.  Domino's has opposed this motion and has included in its response a request for attorneys' fees incurred in defending the motion.  In their reply in support of the motion to compel, the Brickers have requested that Domino's request for sanctions be stricken and that sanctions instead be awarded against Domino's.  These issues have been fully briefed.  For the following reasons, the Brickers' motion to compel, motion to strike and request for sanctions will be denied.  Further, Domino's request for attorneys' fees will be denied.

I. <u>Background</u>

    By Opinion and Order dated April 8, 2011, Domino's was dismissed as a defendant in this case.  Much of the background of this case was detailed in that order and will not be repeated here.  Briefly, however, for purposes of the current motion, the parties' filings provide the following background.

    Prior to Domino's dismissal, the Brickers intended to depose Julie Wigley, a Domino's employee and Michigan resident. Domino's had identified Ms. Wigley in its initial disclosures as

"a person who may have relevant knowledge or information regarding Domino's defenses to Plaintiff's claims against it" and specifically as "someone who may have knowledge regarding 'R&A Pizza's compliance with its franchise agreement.'"  Memorandum in Opposition (#99), p.3.  On February 25, 2011, counsel for the Brickers noticed Ms. Wigley's deposition to take place telephonically on March 16, 2011, although logistical issues remained to be resolved.  Because Domino's counsel had a conflict, the deposition did not go forward on March 16, 2011.

On March, 24, 2011, while Domino's was still a party to this case, its counsel suggested April 25, 2011, as a possible deposition date.  The Brickers' counsel did not issue a notice of deposition for the April 25 date nor did he serve a subpoena on Ms. Wigley.  Domino's was then dismissed as a party.  By email communication dated April 20, 2011, counsel for the Brickers attempted to confirm Ms. Wigley's deposition.  In response, Domino's counsel stated that, in light of Domino's dismissal and the lack of notice or subpoena, he did not anticipate that the deposition was going forward as scheduled on April 25.  On April 21, 2011, the Brickers filed a motion for a status conference.  On April 22, 2011, Domino's opposed the motion citing the failure to exhaust extrajudicial means of resolution as required.  On April 25, 2011, the Brickers withdrew their request for a status conference.  They filed this motion to compel shortly thereafter.

## II. The Motion to Compel

In their motion, the Brickers contend, in short, that, even though Domino's was dismissed from this case on April 8, 2011, it remained obligated to produce Ms. Wigley, a Domino's employee, for deposition on April 25, 2011, pursuant to the notice originally issued on February 25, 2011, for a March 16, 2011 deposition date.  The motion to compel is focused primarily on the argument that Ms. Wigley's testimony remained relevant to the

-2-

Brickers' claims despite Domino's dismissal.  This assertion of relevance is based on the Brickers' belief that their allegations against defendant Russell Mentzer may have been confirmed by Ms. Wigley's investigation into his compliance with the Domino's franchise agreement.

In response, Domino's argues initially that the Brickers did not make a good faith attempt at any extra-judicial resolution of the dispute, as required by Local Civil Rules 37.1 and 37.2, prior to filing a motion to compel.  More significantly, however, Domino's contends that an order compelling Ms. Wigley's attendance at a deposition on April 25, 2011 could not lawfully issue, even assuming, as the Brickers contend, she has relevant knowledge or information, due to the Brickers' failure to follow the proper procedure for requiring a witness to appear at a deposition.

More specifically, Domino's asserts that Ms. Wigley, who became a non-party witness prior to April 25, 2011, was not served with a subpoena pursuant to Fed.R.Civ.P. 45, and that this is the only way a non-party witness can be obligated to appear for a deposition.  Additionally, to the extent that the Brickers intended to take Ms. Wigley's deposition by telephone, Domino's claims that there was no stipulation or court order for the deposition to be conducted in that manner as required by Fed.R. 30(b)(4).  According to Domino's, there were also other logistical issues which required resolution before any stipulation could have been reached.  Many of these issues, Domino's contends, were a result of the Brickers' expectation that Domino's counsel was responsible for arranging various details of the deposition.

Further, Domino's argues that, pursuant to Fed.R.Civ.P. 37(a)(2), the Brickers have filed their motion to compel in the wrong court.  Because any motion to compel relating to Ms.

Wigley, a non-party, must be made in the court where the discovery is or will be taken, Domino's contends that the motion to compel should have been filed in the Eastern District of Michigan at Ann Arbor, which is where she resides.  Finally, Domino's argues that, in light of the Brickers' complete disregard for the Rules of Civil Procedure, the motion to compel is wholly unjustified and an award of attorneys' fees pursuant to Fed.R.Civ.P. 37(a)(5)(B) is appropriate.  Domino's insists that the Brickers cannot hide behind their relevancy argument in an effort to avoid potential sanctions because that argument does not provide substantial justification for their request for an order compelling her to appear at a deposition.

In reply, the Brickers argue, without any authority, that they were not required to subpoena Ms. Wigley because her deposition had already been arranged by agreement.  In fact, they assert that, because of the agreement, all of the issues raised by Domino's are without merit.  They devote much of their reply to arguing that Domino's failure to abide by the agreement evidences its bad faith or, to the extent the logistics of the deposition had not been resolved, that the failure to reach agreement on those logistical issues is also evidence of Domino's bad faith.  In an effort to demonstrate that any efforts at extrajudicial resolution would have been futile, they express outrage at what they characterize as Domino's "technical objections," and have requested sanctions against Domino's.  Finally, they argue that, because the motion to compel was necessitated by a dispute over the relevancy of Ms. Wigley's testimony, Domino's request for attorneys' fees should be stricken.

Domino's has filed a reply in support of their request for attorneys' fees which includes a response to the Brickers' motion to strike and request for sanctions.  As would be expected, Domino's challenges the Brickers' version of events as well as

-4-

their allegations of bad faith.

### III. Analysis

Making sure that a witness either attends a deposition, or that, if the witness fails to do so, the party who wishes to take the deposition is then in a position to obtain some type of relief for that witness' failure to appear, is a procedure which is completely governed by rule. The basics of this procedure are well-known (or should be well-known) to all litigators. And the procedure varies depending upon whether the witness is a party or a non-party.

If a party, including "a party's officer, director, or managing agent," see Fed.R.Civ.P. 37(d)(1)(A)(i), fails to appear for a deposition "after being served with proper notice", id,, the Court may, upon motion, impose sanctions. Those sanctions can include those sanctions listed in Fed.R.Civ.P. 37(b)(2) as well as "further just orders." Id. Fed.R.Civ.P. 37(d)(1) allows a party to move for "an order compelling ... discovery." In the context of compelling a party to appear for a deposition, such an order may be issued only if a proper deposition notice is served. See, e.g., Hotel Management Group, Inc. v. CC, LLC, 2008 WL 1990666 (M.D. Fla. May 05, 2008).

The procedure is substantially different for non-parties. In order to obtain an order compelling a non-party to appear for a deposition, the party seeking the deposition must not only notice the deposition, but must also properly serve the non-party with a deposition subpoena pursuant to Rule 45. See Fed.R.Civ.P. 45(a)(1)(A)(iii). A deposition subpoena must be issued "from the court for the district where the deposition is to be taken," Fed.R.Civ.P. 45(a)(2)(B), and such a subpoena is properly served on a non-party deponent only within the district of the court issuing the subpoena, at any place outside that district if the deposition is to be held at a place within the district  that is

100 miles or less from the place of service, or at any other location permitted by state law for a state court of general jurisdiction sitting within the district.  Fed.R.Civ.P. 45(b)(2), Rule 45 also sets forth specific requirements for the manner of service and for items, such as fees, which must be tendered along with the subpoena.  See Fed.R.Civ.P. 45(b)(1).  If these rules are properly followed, the Court which issued the subpoena may enforce it; otherwise, it lacks the power to do so.  See, e.g., Apache Corp. v. Globalsantafe Drilling Co., 2009 WL 872893 (W.D. La. March 26, 2009) (court has no power to enforce facially invalid subpoena).

Given the existence of these specific procedures, one would ordinarily expect a motion to compel a witness' attendance at a deposition to rely on one of two bases for such an order: either that the witness is a party and a proper notice was served, or the witness is a non-party and a proper subpoena was served.  The Brickers' motion to compel refers to procedural matters only in passing, appearing to argue that the combination of the initial notice and agreements made between counsel after the initial notice were enough to make Ms. Wigley's attendance at the April 25, 2011 deposition mandatory.  The Court cannot reach that conclusion.

The deposition notice (which was not promptly filed after service as required by Fed.R.Civ.P. 5(d), but which is attached as an exhibit to the Brickers' reply memorandum), set March 16, 2011 for the date of the deposition.  It also stated that the deposition would occur at a location in Columbus, Ohio, and be done telephonically.  An email written by the Brickers' counsel on February 25, 2011, which the Court assumes was sent before the notice was served, also proposed that the deposition take place by telephone.

In response to either the email or the notice, or perhaps

-6-

both, Domino's counsel sent an email, also dated February 25, 2011, in which he pointed out (correctly) that the only way a telephone deposition can be conducted is by stipulation of the parties or by court order, neither of which had occurred.  That same email (again, correctly) advised the Brickers' attorney that it was his responsibility to obtain a court reporter in Ann Arbor, should the deposition proceed by telephone, and that the location of the deposition should have been specified as Ann Arbor rather than Columbus.  The email concluded with an invitation to the Brickers' counsel to revise the notice to cure these problems.  The Court concludes that this email constitutes a prompt objection to the form of the notice, as required by Rule 32(d)(1), and that these objections were not waived.  No amended notice was ever issued.

Although there is no exhibit reflecting that the parties either discussed or agreed to change the proposed date of the deposition prior to March 16, 2011, an email sent by the Brickers' counsel on March 23, 2011 asked for deposition dates for Ms. Wigley (referred to in the email as Ms. Quigley) in late April.  In response, counsel stated only the following on that subject: "Ms. Wigley is available for her deposition on 4/25 or 4/29."  Counsel for the other defendants, who was copied on this email thread, said he was not available on April 29th; the Brickers' counsel then replied, "Let's go forward on April 25th."  Again, no new notice was served.

The next series of emails which counsel have provided the Court begin with one sent by the Brickers' counsel on April 20, 2011, which inquired "Let me know where to call for the deposition on Monday.  Also, please confirm that a Notary will be present."  From this email, it can be inferred that the Brickers' counsel had not attended to any of the logistical details which had previously been brought to his attention.  The same day

-7-

(which was both the Wednesday before the purported deposition date of Monday, April 25, and twelve days after Domino's was dismissed as a party), Domino's counsel sent an email making the following points: (1) he had removed the deposition date from his calendar when the dismissal order was filed; (2) neither an amended deposition notice nor a subpoena had been issued; (3) the logistical issues he raised in his email of February 25 had never been addressed; (4) the Brickers' counsel had not made any arrangements for the deposition to go forward, such as hiring a court reporter and a notary, reserving a location, and setting up the phone link; and (5) any testimony Ms. Wigley had to offer was no longer relevant.  The Brickers' counsel responded that Domino's position was "frivolous."  After unsuccessfully attempting to set up a telephone conference about this matter, the Brickers filed their motion to compel.

The first question arising from these facts is whether a valid deposition notice was ever issued.  The choice simply to issue a notice and not a subpoena raises a number of issues, such as whether Ms. Wigley is, in fact, an officer, director, or managing agent of Domino's who could have been validly subjected to a deposition by way of a notice rather than a subpoena, but Domino's appears never to have objected to her being treated as its representative, so that issue is not before the Court.  The issue of taking the deposition by telephone is another matter, however.

Ordinarily, absent an agreement, the only way for a party to take a deposition in that manner is to file a motion with the Court and to "present a legitimate reason for its request."  Cressier v. Nenenschwander, 170 F.R.D. 20, 21 (D. Kan. 1996).  The opposing party then has an obligation to show why a more traditional method, rather than taking testimony over the telephone, would be preferable.  Id.  The case law is replete

-8-

with proceedings on motions for leave to take a deposition telephonically, but there is no authority (and the Brickers have cited none) for the proposition that a party may unilaterally specify that procedure in a deposition notice and have the notice be considered valid even in the face of a timely objection.  The same is true with respect to the location which was specified - it was erroneous because the place of a telephone deposition is the location of the witness, not of counsel.  See Menovcik v. BASF Corp., 2010 WL 4867408 (E.D. Mich. November 23, 2010).  That, too, was subject to objection.  Consequently, the Court concludes that the Brickers never served a proper deposition notice.  That conclusion eliminates the need to decide the question of whether, had the initial notice been valid, the dismissal of Domino's as a party voided the notice - something which is a distinct possibility given that the sanctions available for the failure to appear at a deposition after proper notice is given all relate to relief the Court would ordinarily grant against a party, such as an order precluding the introduction of evidence or the granting of a default or dismissal of claims, none of which is available as against someone who is no longer a party to the case.

   There is no dispute that the Brickers never served Ms. Wigley, or Domino's, with a subpoena.  Thus, the Court has no power to impose any sanctions or issue any orders under Rule 45 relating to the proposed deposition.  That leaves open only the possibility that the parties had entered into an enforceable agreement concerning the April 25, 2011 deposition.

   Fed.R.Civ.P. 29 allows the parties to stipulate to discovery procedures, including the taking of depositions other than in strict accordance with the Rules of Civil Procedure, and the parties often do make agreements about discovery in lieu of insisting on complete and strict compliance with any applicable

rules. Prior to its amendment in 2007, Rule 29 required any such stipulations to be in writing. See, e.g., Lee v. Central Gulf Towing, LLC, 2004 2988478 (E.D. La. 2004). The 2007 amendment removed the word "written" from the introductory sentence; however, the Advisory Committee notes for that amendment indicate that the change occurred as part of "the general restyling of the Civil Rules to make them more easily understood" and that "[t]hese changes are intended to be stylistic only." It is not clear whether agreements about discovery are still required to be in writing, but because the only evidence submitted to the Court of an agreement about this deposition consists of the parties' written communications, the Court need only review those communications to determine if an agreement had, in fact, been reached.

A fair reading of those communications does not support the Brickers' assertion that counsel had come to an agreement that Ms. Wigley would be deposed by telephone on April 25, 2011. It is true, of course, that "[t]he burden of establishing the elements of a contract is on the party asserting the existence of one," Huffer v. Herman, 168 F.Supp. 2d 815, 823 (S.D. Ohio 2001), and that axiom applies to all types of agreements, including discovery agreements. With respect to a deposition, because Fed.R.Civ.P. 30 mandates that a notice of deposition state the time and place of the deposition, the deponent's name and address, and the method of recording, these, at least, are the material elements of any agreement concerning a deposition which is made independent of a formal notice. The Brickers have simply not met their burden of showing an agreement on all of these terms. While they and Domino's may have agreed on who the deponent was to be, and, perhaps, on the date - April 25 was a date suggested by Domino's - there is no evidence that they ever agreed on a location or that the deposition could be taken by

-10-

telephone.  Without such an agreement, the Court could not grant a motion to compel, because it would be unable to compel the witness to appear at any particular place and would similarly be unable to compel her to submit to a telephonic deposition, as those terms had not been agreed to.  Thus, the Brickers have not shown that there was a valid notice of deposition served, a valid subpoena served, or a valid agreement reached.  Without at least one of those prerequisites being established, there is no legal basis for an order compelling discovery.

It is apparent from the tone of the reply memorandum (which the Court finds to be unnecessarily accusatory and strident) that the Brickers' counsel believed that there had been an agreement and that any missing elements were simply details that could reasonably be worked out.  It is equally clear from Domino's memorandum in opposition that Domino's believed both that there had never been an agreement and that its dismissal from the case dramatically altered the landscape concerning making Ms. Wigley available for a deposition.  It is unfortunate that the matter progressed as far as it did before either side raised a question about whether the deposition would proceed in light of the dismissal, which was undoubtedly a significant event and which, in fairness, should have alerted the Brickers' counsel that whatever prior arrangements he believed were in place for the deposition might be in jeopardy.

Without delving too deeply into the question of whose responsibility it was to initiate communications about that matter, it bears emphasizing that the real issue here is what a party must do in order to obtain a motion to compel a witness' attendance at a deposition if, contrary to that party's expectations, things fall apart as they did here.  Certainly, counsel who are used to working these matters out in an informal fashion (and the Court encourages counsel to be flexible and

cooperative about all matters relating to discovery, including depositions) may be unpleasantly surprised at some point if cooperation ceases and they are forced to resort to more formal means of securing their discovery.  Should that happen, however, such counsel should take care to insure that they have either properly noticed a deposition, which includes timely responding to valid objections to any notice previously served, or have obtained a clear agreement about all the essentials of the discovery in question, together with evidence - preferably, or perhaps mandatorily, in writing - of that agreement that can be proffered to the Court.  Absent either of these things, a motion to compel will necessarily fail on procedural grounds regardless of whether, as a matter of substance, the discovery is relevant. That is what has happened here.  However, even though the motion to compel lacked a firm legal basis, the Court cannot say that it fell so far below the standard of acceptable practice that sanctions should be awarded.  Further, since Domino's had the better of the technical legal arguments here, there is no basis on which the Court may award such fees to the Brickers.  It is the Court's hope that, having been through this process once, neither counsel will find himself in a similar position in the future.

### IV.  Conclusion and Order

For the reasons stated above, the motion to compel (#88) is denied.  Plaintiffs' motion to strike and for sanctions contained in its reply (#103) also are denied.  Domino's request for an award of attorneys' fees contained in its response (#99) is denied.

### V.  Procedure for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt.

I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp  
United States Magistrate Judge